

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

---

DS:AH/MG                           *271 Cadman Plaza East*
F.#2013R00312                       *Brooklyn, New York  11201*


April 8, 2013

By Hand Delivery and ECF

The Honorable William F. Kuntz II
United States District Court
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York  11201

              Re:  United States v. Mohammad Ajmal Choudhry
                   Criminal Docket No. 13-150 (WFK)

Dear Judge Kuntz:

        The government respectfully submits this letter in
opposition to the defendant's request for release on bail.  See
Defendant's Letter dated April 3, 2013 ("Def.'s Ltr.").  As set
forth below, the defendant is a danger to the community and a
risk of flight, and he should be detained pending trial.

I.   Background

     A.   Proffered Facts

        The government proffers the following facts regarding
the charged crimes.[1]

        In or about February 2013, Amina Ajmal ("Amina"), a
United States citizen, contacted United States law enforcement
officers through counsel and reported that she had been held
against her will by relatives in Gujrat, Pakistan, at the
direction of her father, defendant Mohammad Ajmal Choudhry
("defendant Choudhry"), and forced into an arranged marriage with
Pakistani national Abrar Ahmed Babar ("Babar").  While in
Pakistan, Amina resided with the defendant's brother, Muhammad

---

        [1]   The government is entitled to proceed by proffer in a
detention hearing.  United States v. Abuhamra, 389 F.3d 309, 320
n.7 (2d Cir. 2004); United States v. LaFontaine, 210 F.3d 125,
130-31 (2d Cir. 2000); United States v. Martir, 782 F.2d 1141,
1145 (2d Cir. 1986).

April 8, 2013
Page 2

Akmal Choudhry, and other family members.  Amina reported that the marriage was arranged and coerced for the purpose of obtaining U.S. legal permanent residency ("LPR") status for Babar.  The marriage between Amina and Babar was finalized sometime in November 2012.  Amina further indicated that, although she had never signed any immigrant visa paperwork on Babar's behalf, others may have filed an immigrant visa petition for Babar without her consent.[2]

Amina escaped from confinement in Pakistan with the assistance of a cousin ("Cousin") and the U.S. Embassy in early January 2013.  Since her escape, Amina has not revealed her whereabouts to her father, the defendant Choudhry.  Amina has, however, spoken with her father in recorded telephone calls.  In those recorded telephone calls, the defendant Choudhry repeatedly asked Amina to return home and threatened that if she did not, he would kill her Cousin and her Cousin's family for bringing dishonor upon his family.[3]

On January 26, 2013, a member of the Cousin's family (the "Complainant") filed a police report with Pakistani law enforcement authorities claiming that members of the defendant's family opened fire on certain members of the Cousin's family as

_____

[2]    An immigrant visa petition ("visa petition") listing Amina as the petitioner and Babar as the relative beneficiary was, in fact, mailed from Brooklyn, New York to the United States Citizenship and Immigration Services on December 1, 2012.  The visa petition bore the purported signature of Amina and listed a particular street address in Brooklyn ("Brooklyn address") as Amina's residence since 2008.  As of the time the visa petition was mailed, however, Amina was living in Pakistan and had not been in the United States for several years.  The defendant Choudhry, on the other hand, was living at the Brooklyn address as of the date the visa petition was mailed.  In a consensually recorded conversation between Amina and the defendant Choudhry on February 21, 2013, the defendant admitted that he was the person who filed the visa petition on behalf of Babar.  Also, in a post arrest interview, the defendant again stated, in sum and substance, that he had filed the visa application for Babar.

[3]    Certain portions of those consensually recorded conversations are transcribed herein.  Because Amina and her father spoke Punjabi during those calls, the transcribed portions have been translated from Punjabi to English, and are in draft form.

April 8, 2013
Page 3

they were driving in a Jeep.  The Complainant indicated that the defendant's brother Mohammad Akmal Choudhry and Amina's husband Babar were among the shooters.

On February 21, Amina consensually recorded the following conversation with the defendant Choudhry:

| | |
|---|---|
| Amina: | Please stop doing whatever you are doing, back in Pakistan. |
| Choudhry: | What am I doing in Pakistan? |
| Amina: | To them . . . |
| Choudhry: | I will not end this, until I find you.  I will kill their entire family. |
| Ajmal: | Why would you kill them?  You know I came on my own? |
| Choudhry: | For me it's the same.  I swear to God, no harm will be done to you, if you come back home.  No one will bother you.  Otherwise, I will catch each and every person of their family, and will kill them, until I find you. |

* * *

| | |
|---|---|
| Choudhry: | What are we doing to them? |
| Amina: | The bullets that you have shot at them. |
| Choudhry: | I will continue to shoot at them.  I will kill myself and kill them as well. |

On February 21, 2013, the following call was recorded between Amina and the defendant Choudhry:

| | |
|---|---|
| Choudhry: | . . . You come before something happens. |
| Amina: | What will you do? |
| Choudhry: | I will kill them, I will kill one of their[s]. |

* * *

April 8, 2013
Page 4

| | |
|---|---|
| Choudhry: | I want you to take note of something I have to say as well. |
| Amina: | What? |
| Choudhry: | [U/I] I will kill them one by one and go to jail . . . the whole family will go to jail . . . when [U/I] I killed them they will [U/I] . . . think about this. |

* * *

| | |
|---|---|
| Choudhry: | . . . If you come back then I will spare them.  Come home and they are spared.  If you don't come then it's death and death. |
| Amina: | . . . I will call back then. |

* * *

| | |
|---|---|
| Choudhry: | Give me a decision quick. |
| Amina: | Ok. |
| Choudhry: | Tell me by tonight of your decision. |

According to Pakistani police and media reports, on February 25, 2013, four days after the defendant Choudhry delivered the above-referenced ultimatum to Amina to return home or else, two of the Cousin's immediate family members were shot and killed in Pakistan, and another relative was severely injured.  According to an eyewitness ("Eyewitness"), the defendant Choudhry's brother, Muhammad Akmal Choudhry, was observed standing over the murdered victims, holding a gun, and desecrating the bodies.  The Eyewitness filed a police report with the Pakistani law enforcement authority and further alleged in the report that the murders were committed at the behest of defendant Choudhry and his brother, Muhammad Afzal Chaudhry.[4] On that same day, after the murders of the Cousin's immediate family members, the following call was recorded between Amina and her father, defendant Choudhry:

| | |
|---|---|
| Amina: | Have you done this? |

---

[4]      At the time of the murders, Muhammad Afzal Chaudhry was living with defendant Choudhry in Brooklyn, New York.

April 8, 2013
Page 5

| | |
|---|---|
| Choudhry: | What should have been done? |
| Amina: | I told you.  I will come back and was thinking about it, and you . . . |
| Choudhry: | Come back home right now.  We will be spared.  Just come, it's final. |
| Amina: | Now, there is no way left.  You have already killed him. |
| Choudhry: | Even now, come back home, otherwise, all of us will be killed and so will they. |

* * *

| | |
|---|---|
| Amina: | You killed him, father. |
| Choudhry: | I did not kill him.  Why do you keep repeating the same thing, that I killed him?  Even if I did kill him, isn't a person supposed to kill that being, when he finds out that his daughter ran away because of him? |

* * *

| | |
|---|---|
| Amina: | I know you killed him. |
| Choudhry: | I did not kill him, but I will kill the entire family.  I have already thought about who to kill.  I know I will not leave them alive. |

* * *

| | |
|---|---|
| Amina: | Father, you are killing people there, so how can I come back home? |
| Choudhry: | Why?  Come home now quietly.  We will kill them, and they will kill us.  What good would it be if you return, after all this? |

* * *

| | |
|---|---|
| Amina: | . . . I told you that I will come home.  Please don't do all this, but you said "I |

April 8, 2013
Page 6

will kill each and every person of their family," so you did it today . . .

Choudhry:    No, I said I will not leave a single one of them alive, and now, I swear in front of you, that I will not spare a single one. Although someone else killed this time, and made me a part of it, I did not kill him. But I am not going to spare . . .

Amina:    You have done it, nobody else killed him.

Choudhry:    You swore to your mother, but you broke that promise.  But I swear to my mother now, and will keep that promise.  I will not leave a single member of their family alive.  My name is tainted everywhere in newspapers, on TV channels, that I am a man with no honor, my daughters are whores . . . I have no place to show my face with dignity . . . you still have time.  Think about it, in the next 24 hours . . .

Amina:    What will you do after 24 hours?

Choudhry:    What else?  Another person will be gone.  Is he coming today?

Amina:    How do you know?

Choudhry:    Because he has to attend his father's funeral in the morning.  He will not return home after the funeral.  Okay?

Amina:    You killed his father, because you knew he would come to his father's funeral and then you can kill him too.[5]

On February 25, 2013, defendant Choudhry was arrested outside his home in Brooklyn.  During a post arrest interview,

---

[5]    Upon information and belief, when the defendant Choudhry stated that "he has to attend his father's funeral in the morning" and "he will not return home after the funeral," the defendant Choudhry was referring to his intention to have the Cousin killed when the Cousin came to attend his father's funeral.

April 8, 2013
Page 7

defendant Choudhry stated that "I might have said if you don't come home I'll kill the boy."  Defendant Choudhry further stated that his brother Mohammad Akmal Choudhry "might have been" at the scene of the shooting of the Cousin's relatives in Pakistan earlier that day.[6]  Defendant Choudhry was arraigned the following day, in United States v. Mohammad Ajmal Choudhry, 13-M-171.  At that time, Magistrate Judge Azrack entered a permanent order of detention.

     B.     <u>Indictment</u>

On March 11, 2013, a grand jury returned an indictment charging the defendant Choudhry with transmitting in interstate commerce communications containing a threat to injure the person of another on or about and between February 15 and 25, 2013, in violation of 18 U.S.C. § 875(c), and committing visa fraud, in violation of 18 U.S.C. §§ 1546(a) and 2.

II. <u>Legal Framework</u>

Under the Bail Reform Act, 18 U.S.C. § 3141 <u>et</u> <u>seq</u>., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or poses a risk of flight or obstruction of justice.  18 U.S.C. § 3142(e) ("no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community").  A finding of dangerousness must be supported by clear and convincing evidence.  <u>United States v. Ferranti</u>, 66 F.3d 540, 542 (2d Cir. 1995); <u>United States v. Chimurenga</u>, 760 F.2d 400, 405 (2d Cir. 1985).  A finding of risk of flight must be supported by a preponderance of the evidence.  <u>United States v. Jackson</u>, 823 F.2d 4, 5 (2d Cir. 1987); <u>Chimurenga</u>, 760 F.2d at 405.  Moreover, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and

---

[6]    After being provided with <u>Miranda</u> warnings and invoking his right to counsel, defendant Choudhry spontaneously began to make statements to agents concerning the investigation.  At that time, an agent reminded defendant Choudhry that he had asked to speak with a lawyer.  Without any questioning from agents, defendant Choudhry continued to make statements.  After some time, an agent again reminded defendant Choudhry that he had asked for a lawyer and that none of the agents had asked him any questions, nor would they.  Nonetheless, defendant Choudhry continued to make statements, including the statements recounted herein.

April 8, 2013
Page 8

circumstances of the offenses charged, (2) the weight of the
evidence against the defendant, (3) the history and
characteristics of the defendant, and (4) the nature and
seriousness of the danger to any person or the community that
would be posed by the defendant's release.  18 U.S.C. § 3142(g).

III. <u>Analysis</u>

        As set forth more fully below, the proffered facts
clearly establish that defendant Choudhry is a danger to the
community and a risk of flight, and should be detained pending
trial.[7]

        A.    The Evidence of Against the Defendant With Respect
              <u>to the Charged Crimes is Strong</u>

        The defendant is charged with visa fraud and
transmitting threats over the telephone.  As detailed above, the
proffered evidence is overwhelming.  With respect to visa fraud,
the defendant admitted having filed the visa petition during a
consensually recorded telephone conversation on February 21,
2013, and also during spontaneously uttered post arrest
statements.  Coupled with the proffered evidence that the visa
petition was fraudulently signed in the name "Amina Ajmal" and
mailed from Brooklyn, New York while Amina was in Pakistan but
the defendant was residing in Brooklyn, the evidence weighs
strongly against the defendant.  With respect to the transmission
of threats over the telephone, the evidence against Choudhry is
also exceedingly strong.  The consensually recorded conversations
recounted herein not only provide conclusive proof of the charged
crime, but also provide a chillingly explicit record of the

_____

        [7]    In his letter and related attachments, the defendant
and others makes various representations regarding the
defendant's character, the character of the victim Amina, and the
character of the Cousin who assisted Amina's escape from
Pakistan.  The defendant also attaches various foreign affidavits
in an attempt to establish alibi defenses for individuals other
than the defendant, who are accused of having participated in
violence against the Cousin's family in Pakistan.  While the
government has reason to believe that certain representations by
the defendant in these respects are false, none of these
representations alter the fact that, based on the defendant's own
recorded statements and the strength of the evidence with respect
to the currently charged conduct, the defendant presents a
serious risk of flight and poses a substantial danger to the
community.

April 8, 2013
Page 9

defendant's unabated intentions.  Although the defendant suggests
that the potential penalties accompanying any conviction are not
severe enough to engender a risk of flight, see Def's Ltr. at 6,
the almost certain risk of a significant period of incarceration
is sufficient to provoke the defendant - who has significant and
extensive ties to Pakistan - to flee the jurisdiction.  Moreover,
the defendant is aware that the government is conducting an
ongoing investigation into the murders of the Cousin's family in
Pakistan.  This fact also gives rise to a heightened incentive to
flee.

      B.      <u>The Defendant Presents a Risk of Flight</u>

      In addition to the strength of the government's case
against him, defendant Choudhry also presents a significant risk
of flight because of his strong ties to Pakistan and his interest
in events currently taking place in Pakistan.  With respect to
his strong ties to Pakistan, as is evident from the defendant's
submission, the defendant Choudhry maintains a close relationship
with both his immediate and extended family in Pakistan
(including his daughter and two siblings), has a continued
financial interest in the family compound and assets in Pakistan,
and, through his brother Mohammad Afzal Chaudhry, is connected to
influential politicians in Pakistan.  In addition to his strong
ties to Pakistan, the defendant also has significant reasons to
travel to Pakistan immediately, many of which are, in fact, also
detailed in the defendant's letter submission.  Specifically, in
his letter, the defendant Choudhry asks this Court to release his
brother, Mohammad Afzal Chaudhry, from certain conditions of
release that were imposed upon him based on his status as a
material witness.  <u>See</u> Def's Ltr. at 20; <u>see also</u> <u>In the matter
of Muhammad Afzal Chaudhry</u>, 13-m-193.  As an initial matter,
Muhammad Afzal Chaudhry is represented by separate counsel and
defendant Choudhry has no standing to make such an application.
Nevertheless, in his letter, the defendant Choudhry details
numerous reasons why he believes it is important for his brother,
Mohammad Afzal Chaudhry, to return to Pakistan, including the
fact that the family risks losing control of their significant
property and assets in Pakistan because they are currently
unattended.[8]  <u>See</u> Def's Ltr. at 20-21.  Ironically, these same

_____

     [8]     Although the defendant states that the property is
unattended because "[s]ince the homicides, some members of Mr.
Choudhry's family have fled in fear of <i>reprisals</i>," it is more
likely that defendant Choudhry's family - including his brother
Mohammad Akmal Choudhry - have fled in order to avoid
prosecution.  <u>See</u> Def.'s Ltr. At 21 (emphasis added).

April 8, 2013
Page 10

reasons apply equally - if not more - to the defendant Choudhry,
and provide further incentive for defendant Choudhry to flee to
Pakistan if released on bail.

B.      The Defendant Is A Danger to the Community and Poses
        a Risk of Obstruction of Justice

        The defendant poses a substantial danger to the
community, including surviving members of the Cousin's family and
prospective witnesses in this case, including Amina.  As an
initial matter, the transmission of threats over the telephone,
in violation of 18 U.S.C. § 875(c), is a "crime of violence"
under the Bail Reform Act.  United States v. Ciccone, 312 F.3d
535, 542 (2d Cir. 2002) (under 18 U.S.C. § 3156(a)(4), a "crime
of violence" is an offense that has as an element the "attempted
use, or threatened use of physical force against the person or
property of another").  Moreover, in this case, the defendant's
threats were particularly serious and indicate that he remains a
clear and present danger to the community for several reasons.
First, the defendant repeatedly reiterated that he will persist
in his desire to kill individuals whom he perceives to have
brought dishonor upon him regardless of the fact that his actions
will result in law enforcement action against him.  For example,
defendant Choudhry repeatedly stated that until Amina returns
home, he "will not end this" and "will continue to shoot at them"
even if it means that he "will go to jail."  Those statements not
only evidence the defendant's lack of respect for the criminal
justice system, but also refute any self-serving statements made
in his application for bail that he will abide by conditions
imposed upon him should he be released.  See Def.'s Ltr. At 20
("Mr. Choudhry is amenable to whatever conditions the Court
imposes.").  In several of the calls, the defendant also asks
Amina – one of the individuals who the defendant perceives to
have brought dishonor upon him - to reveal her present
whereabouts to him, which she refuses.  If he were to be released
on bail, he would likely persist in efforts to locate her.
Second, the defendant's statements to Amina after the murder of
the Cousin's family evidence the fact that he continues to take
actions in an effort to locate the Cousin and kill him.
Specifically, the defendant Choudhry's statement to Amina on
February 25, 2013 that "another person will be gone" when he
"attend[s] his father's funeral in the morning" indicates that
Choudhry made efforts to determine the likely whereabouts of the
Cousin for purposes of orchestrating his murder.

        Finally, as evidenced by the transcribed portions of
the telephone calls herein, the defendant's statements contain

April 8, 2013
Page 11

explicit and implicit admissions of his involvement in the
violence inflicted upon the Cousin's family in Pakistan.  See
February 21, 2013 telephone call excerpted above ("I will
continue to shoot at them").  This Court is permitted to take
uncharged conduct into account in assessing the degree of danger
posed by the defendant's release.  See United States v.
Rodriguez, 950 F.2d 85, 88 (2d Cir. 1991).

      D.      No Conditions of Release Would Protect the Community
            from the Defendant and Ensure His Appearance

      The government submits that no conditions would ensure
the safety of the community and the appearance of the defendant
in future proceedings in this case.  In particular, the Second
Circuit has held that home detention and electronic monitoring
can be insufficient to protect the community against dangerous
individuals.  United States v. Millan, 4 F.3d 1039, 1048-49 (2d
Cir. 1993) ("Home detention and electronic monitoring at best
elaborately replicate a detention facility without the confidence
of security such a facility instills.") (internal citations and
quotation marks omitted); see also United States v. Orena, 986
F.2d 628, 632 (2d Cir. 1993) ("electronic surveillance systems
can be circumvented by the wonders of science and of
sophisticated electronic technology") (internal citations and
quotation marks omitted).  For these reasons, courts in this
district routinely deny bail to dangerous defendants such as this
defendant.  See, e.g., United States v. Cantarella, Crim. No.
02-307 (S-2) (NGG), 2002 WL 31946862, at *3-4 (E.D.N.Y. Nov. 26,
2002) (adopting "principle" of "den[ying] bail to 'dangerous'
defendants despite the availability of home detention and
electronic surveillance and notwithstanding the value of a
defendant's proposed bail package"); United States v. Agnello,
101 F. Supp. 2d 108, 116 (E.D.N.Y. 2000) ("the protection of the
community provided by the proposed home detention remains
inferior to that provided by confinement in a detention
facility"); United States v. Masotto, 811 F. Supp. 878, 884
(E.D.N.Y. 1993) ("[T]he Second Circuit appears to be saying to us
that in the case of 'dangerous defendants' the Bail Reform Act
does not contemplate the type of conditions suggested by this
Court and that, even if it did, the conditions would not protect
the public or the community, given the ease with which many of
them may be circumvented.").  Moreover, with respect to risk of
flight, I have been advised by law enforcement agents that even
if, as part of the defendant's bail conditions, he were required
to surrender his passport, it is possible for nationals of
Pakistan to apply for, and receive a new passport from the

April 8, 2013
Page 12

Pakistani consulate which would allow travel to Pakistan without
the Court's or the government's knowledge or consent.[9]

III. <u>Conclusion</u>

      For the foregoing reasons, the government respectfully
requests that the Court deny the defendant's request for release
on bail.

                        Respectfully submitted,

                        LORETTA E. LYNCH
                        United States Attorney

                By:         /s/
                        Amanda Hector
                        Margaret Gandy
                        Assistant U.S. Attorneys
                        (718) 254-6212
                        (718) 254-6213

cc: Clerk of the Court (by ECF)
    Defense counsel (by ECF)

---

    [9]    The defendant Choudhry also asserts that he suffers
from several medical conditions, including diabetes, gout,
arthritis, obesity, high cholesterol and insomnia.  <u>See</u> Def's
Ltr. at 17.  There is simply no reason to believe that the Bureau
of Prisons is incapable of treating these commonplace conditions
and the defendant has not shown otherwise.