DS:AH/MG
F.#2013R00312

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - -X

IN THE MATTER OF AN APPLICATION FOR
A SEARCH WARRANT FOR:

THE PREMISES KNOWN AND DESCRIBED AS
ELECTRONIC MAIL ADDRESS
"shakilajmal@hotmail.com"

- - - - - - - - - - - - - - - -X

AFFIDAVIT IN SUPPORT OF
APPLICATION FOR A SEARCH
WARRANT

(Fed. R. Crim. P. 41)

EASTERN DISTRICT OF NEW YORK, SS:

  CHRISTOPHER HECK, being duly sworn, deposes and states
that he is a Special Agent with the Department of Homeland
Security, Homeland Security Investigations, duly appointed
according to law and acting as such.

  Upon information and belief, there is probable cause to
believe that there is located in THE PREMISES KNOWN AND DESCRIBED
AS ELECTRONIC MAIL ADDRESS "shakilajmal@hotmail.com" (the
"SUBJECT EMAIL PREMISES") subscriber/profile information, email
transmission information, subject headings, to/from information,
folders and email content (including all of the foregoing for
deleted messages), as described more fully in Attachment B, which
constitute evidence, fruits and instrumentalities of conspiracy
to commit murder abroad, in violation of Title 18, United States
Code, Section 956 and the transmission of threats to injury the
person of another in interstate commerce, in violation of 18
U.S.C. § 875(c).

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.   I am a Special Agent with the Department of Homeland Security, currently assigned to Homeland Security Investigations ("HSI").  I have been employed by the Department of Homeland Security as a Special Agent for approximately four and a half years.  I am primarily responsible for conducting and assisting in investigations into the activities of individuals and criminal groups involved in immigration offenses, including visa and marriage fraud, and human smuggling offenses.  These investigations are conducted both in an undercover and overt capacity.  I have participated in investigations involving search warrants and arrest warrants.  As a result of my training and experience, I am familiar with the techniques and methods of operation used by individuals involved in criminal activity to conceal their activities from detection by law enforcement authorities.

2.   I have personally participated in the investigation of the offenses discussed below.  I am familiar with the facts and circumstances of this investigation from: (a) my personal participation in this investigation; (b) reports

---

[1] Because this affidavit is submitted for the limited purpose of establishing probable cause for a search warrant, I have not set forth each and every fact learned during the course of the investigation.

made by other law enforcement authorities, including English translations of Pakistani police reports; (c) interviews with witnesses and victims; (d) English translations summarizing the content of telephone conversations in Punjabi that were recorded during the investigation; and (e) other records and reports.

3.    HSI, in conjunction with law enforcement partners, has been investigating Mohammad Ajmal Choudhry ("Choudhry"), for unlawfully communicating threats to injure certain persons over the telephone in violation of 18 U.S.C. § 875(c), fraudulently filing a Petition for Alien Relative that purported to be completed by his daughter, Amina Ajmal, when in fact, Choudhry well knew and believed that Amina Ajmal had not completed the Petition in violation of 18 U.S.C. § 1546(a), and conspiring to commit murders in Pakistan in violation of 18 U.S.C. § 956.

I.    BACKGROUND

4.    In or about February 2013, Amina Ajmal ("Amina"), a United States citizen, contacted United States law enforcement officers through counsel and reported that she had been held against her will by relatives in Gujrat, Pakistan, at the direction of her father, Choudhry, and forced into an arranged marriage with Pakistani national Abrar Ahmed Babar ("Babar"). While in Pakistan, Amina resided with Choudhry's brother, Muhammad Akmal Choudhry, and other family members. Amina reported that the marriage was arranged and coerced for the

3

purpose of obtaining U.S. legal permanent residency ("LPR") status for Babar.  The marriage between Amina and Babar was finalized sometime in November 2012.  Amina further indicated that, although she had never signed any immigrant visa paperwork on Babar's behalf, others may have filed an immigrant visa petition for Babar without her consent.

   5. Based on the information provided by Amina, I and other agents queried law enforcement and other databases and located an I-130 petition, receipt number MSC1390305256, listing Amina as petitioner and Babar as the relative beneficiary.  The petition was mailed from zip code 11230 in Brooklyn, New York, and was received by U.S. Citizenship and Immigration Services on December 6, 2012.  The  petition bore the purported signature of Amina and listed a particular street address in Brooklyn ("Brooklyn address") as Amina's residence since 2008.  Upon information and belief, as of the time the visa petition was mailed, however, Amina was living in Pakistan and had not been in the United States for several years.  Choudhry, on the other hand, was living at the Brooklyn address as of the date the visa petition was mailed.  In addition, Amina has reported to me that she did not sign an I-130 petition or any other immigration or visa documents for Babar.

   6. Amina escaped from confinement in Pakistan with the assistance of a family member and the U.S. Embassy in early

4

January 2013.  Since her escape, Amina has not revealed her whereabouts to Choudhry.  Amina has, however, spoken with Choudhry in recorded telephone calls.  In those recorded telephone calls, Choudhry repeatedly asked Amina to return home and threatened that if she did not, he would kill the person whom he believed helped Amina escape Pakistan, as well as that person's family, for bringing dishonor upon his family.  Upon information and belief, and based on the context of the telephone conversations, the people that Choudhry threatened to kill were Shujat Abbas ("Shujat") and Shujat's family.

7.   On January 26, 2013, Shujat's father filed a police report with Pakistani law enforcement authorities claiming that members of Choudhry's family opened fire on him and his wife as they were driving in a Jeep.  Shujat's father indicated that the Choudhry's brother Mohammad Akmal Choudhry and Amina's husband Babar were among the shooters.

8.   On February 20, 2013, Amina consensually recorded a conversation with Choudhry.  The conversation was conducted in Punjabi.  I have asked a Punjabi speaker to interpret portions of the call, which are recounted herein in draft form:

Amina:      Please stop doing whatever you are doing, back in Pakistan.

Choudhry:   What am I doing in Pakistan?

Amina:      To them . . .

5

Choudhry:   I will not end this, until I find you.  I will kill their entire family.

Ajmal:   Why would you kill them?  You know I came on my own?

Choudhry:   For me it's the same.  I swear to God, no harm will be done to you, if you come back home.  No one will bother you.  Otherwise, I will catch each and every person of their family, and will kill them, until I find you.

\* \* \*

Choudhry:   What are we doing to them?

Amina:   The bullets that you have shot at them.

Choudhry:   I will continue to shoot at them.  I will kill myself and kill them as well.

9.   On February 21, 2013, Amina and Choudhry engaged in another consensually recorded conversation.  The conversation was conducted in Punjabi.  I have asked a Punjabi speaker to interpret portions of the call, which are recounted herein in draft form:

Choudhry: . . . You come before something happens.

Amina:   What will you do?

Choudhry: I will kill them, I will kill one of their[s].

\* \* \*

Choudhry: I want you to take note of something I have to say as well.

Amina:   What?

Choudhry: [U/I] I will kill them one by one and go to jail . . . the whole family will go to jail . .

. when [U/I] I killed them they will [U/I] . . . think about this.

\* \* \*

Choudhry: . . . If you come back then I will spare them. Come home and they are spared.  If you don't come then it's death and death.

Amina:    . . . I will call back then.

\* \* \*

Choudhry: Give me a decision quick.

Amina:    Ok.

Choudhry: Tell me by tonight of your decision.

10.  According to Pakistani police and media reports, on February 25, 2013, four days after Choudhry delivered the above-reference ultimatum to Amina to return home or else, Shujat's father and sister were shot and killed in Pakistan, and another relative was severely injured.  According to Shujat's mother, whom I interviewed and who filed a report regarding the murders with the Pakistani law enforcement authorities, when she arrived at the scene of the murders, she observed Choudhry's brother, Muhammad Akmal Choudhry, standing over the dead bodies of her husband and daughter, holding a gun, and kicking and prodding the bodies with his weapon.

11.  On that same day, after the murders of Shujat's father and sister, Amina consensually recorded another conversation with Choudhry.  The conversation was conducted in

7

Punjabi.  I have asked a Punjabi speaker to interpret portions of the call, which are recounted herein in draft form:

Amina:     Have you done this?

Choudhry:  What should have been done?

Amina:     I told you.  I will come back and was thinking about it, and you . . .

Choudhry:  Come back home right now.  We will be spared. Just come, it's final.

Amina:     Now, there is no way left.  You have already killed him.

Choudhry:  Even now, come back home, otherwise, all of us will be killed and so will they.

* * *

Amina:     You killed him, father.

Choudhry:  I did not kill him.  Why do you keep repeating the same thing, that I killed him?  Even if I did kill him, isn't a person supposed to kill that being, when he finds out that his daughter ran away because of him?

* * *

Amina:     I know you killed him.

Choudhry:  I did not kill him, but I will kill the entire family.  I have already thought about who to kill.  I know I will not leave them alive.

* * *

Amina:     Father, you are killing people there, so how can I come back home?

Choudhry:  Why?  Come home now quietly.  We will kill them, and they will kill us.  What good would it be if you return, after all this?

* * *

8

Amina:          . . . I told you that I will come home.  Please don't do all this, but you said "I will kill each and every person of their family," so you did it today . . .

Choudhry:  No, I said I will not leave a single one of them alive, and now, I swear in front of you, that I will not spare a single one.  Although someone else killed this time, and made me a part of it, I did not kill him.  But I am not going to spare . . .

Amina:          You have done it, nobody else killed him.

Choudhry:  You swore to your mother, but you broke that promise.  But I swear to my mother now, and will keep that promise.  I will not leave a single member of their family alive.  My name is tainted everywhere in newspapers, on TV channels, that I am a man with no honor, my daughters are whores . . . I have no place to show my face with dignity . . . you still have time.  Think about it, in the next 24 hours . . .

Amina:          What will you do after 24 hours?

Choudhry:  What else?  Another person will be gone.  Is he coming today?

Amina:          How do you know?

Choudhry:  Because he has to attend his father's funeral in the morning.  He will not return home after the funeral.  Okay?

Amina:          You killed his father, because you knew he would come to his father's funeral and then you can kill him too.

Upon information and belief, when Choudhry stated that "he has to attend his father's funeral in the morning" and "he will not return home after the funeral," Choudhry is referring to his

9

intention to have Shujat killed when Shujat comes to attend his father's funeral.

12.   On February 25, 2013, Choudhry was arrested outside his home in Brooklyn.   Choudhry was arraigned the following day, in <u>United States v. Mohammad Ajmal Choudhry</u>, 13-M-171.   On March 11, 2013, a grand jury returned an indictment charging Choudhry with transmitting threats to injure the person of another in interstate commerce, in violation of 18 U.S.C. § 875(c), and committing visa fraud, in violation of 18 U.S.C. §§ 1546(a) and 2.

II.   <u>PROBABLE CAUSE</u>

 A.   <u>THE SUBJECT EMAIL PREMISES</u>

13.   On April 3, 2013, Choudhry, through counsel, submitted a letter brief seeking bail.   <u>See</u> <u>United States v. Mohammad Ajmal Choudhry</u>, 13-CR-150 (WFK).

14.   In his letter brief, Choudhry asserts that around the time that Shujat's family members were murdered in Pakistan, Choudhry was in email contact with the United States Embassy in Islamabad, Pakistan, regarding his daughter Amina and her relationship with Shujat.   In support of this claim, Choudhry attached copies of his email correspondence ("Email Correspondence") with the United States Embassy to his letter brief.

15.   The Email Correspondence includes emails between the user of the SUBJECT EMAIL PREMISES, who identifies himself as "Mohammad Ajmal Choudhry," and "InfoPort@state.gov."[2]  Upon information and belief, "InfoPort@state.gov" is an email address associated with the United State Embassy in Islamabad, Pakistan and is accessible through that embassy's website.

16.   The Email Correspondence includes an email dated February 21, 2013 that reads as follows: dear and respectable counslate officer[:] This is "Mohammad Ajmal Choudhry" residing at 817 foster ave brooklyn NY 11230.  I want dreaw [sic] your attention to an important point/case.  1[.] I hereby state that Mrs Amina Ajmal Date of birth August 24, 1990 is my daughter and citizen of USA[.] She is a married as er [sic] the Muslim rituals.  2[.] Mr. Shujahat [sic] Abbas having Pakistani passport No. 1016353 issue date September 03, 2012, Pakistani National ID No 34202-157635-1.  He is having a heinous criminal record on his back ground, like he was involved and arrested by "Dubai" (UAE) authorities in smuggling of norcotics [sic] and cotraband [sic] items.  [H]e managed his escape from custody and is declared as Proclaimed Offender by the UAE govt.  He went back to Pakistan by illegal means.   [R]ecently I have come to know that [Shujat Abbas

---

[2]     In the Email Correspondence, the user identifies himself as Mohammad Ajmal Choudhry.  The email address associated with the SUBJECT EMAIL PREMISES is "shakilajmal@hotmail.com."  Upon information and belief, Shakeel Ajmal Choudhry is the son of Mohammad Ajmal Choudhry.

has] developed friendship/close relationship with my above stated married daughter Mrs. Amina Ajmal.  He is trying his level best to come to USA by hook and by crook.  This has also come to my notice that he is misleading and misusing my daughter for this purpose.

17.  The Email Correspondence also includes an email dated February 22, 2013 in which the user of the SUBJECT EMAIL PREMISES indicates that he is providing various documents in support of his claim regarding Shujat Abbas, including photographs of his daughter "Amina Ajmal" and her marriage certificate.  In the same email, the user of the SUBJECT EMAIL PREMISES indicates that he does not have proof of "Mr. Shujahat [sic] Abbas['s]" criminal record but will try to obtain and forward such information.

18.  Accordingly, there is probable cause to believe that the SUBJECT EMAIL PREMISES has been used by Choudhry to communicate with others regarding his daughter, his daughter's marriage, his daughter's relationship with Shujat Abbas, and his purported beliefs about Shujat Abbas and his motives.  Because his daughter's marriage occurred in November 2012 and her escape from Pakistan occurred in early January 2013, there is thus probable cause to believe that Choudhry communicated regarding these topics using the SUBJECT EMAIL PREMISES from November 2012 onward.  As such, there is probable cause to believe that the

12

SUBJECT EMAIL PREMISES will contain evidence of: 1) Choudhry's motivation to threaten and murder Shujat Abbas and his family; 2) Choudhry's efforts to prevent Shujat Abbas from fleeing Pakistan and entering the United States; 3) Choudhry's efforts to impugn the reputation of Shujat Abbas in order to establish potential alternative bases for someone to want to injure Shubat Abbas and his family; and, more generally, 4) communications between Choudhry and others designed to further Choudhry's ability to find and murder Shujat Abbas and his family, all of which constitute evidence, fruits and instrumentalities of conspiracy to commit murder abroad, in violation of Title 18, United States Code, Section 956 and the transmission of threats to injury the person of another in interstate commerce, in violation of 18 U.S.C. § 875(c).

     B.   <u>TECHNICAL BACKGROUND</u>

     19.  The SUBJECT EMAIL PREMISES is an email account which is hosted by Microsoft Corporation (hereinafter, the "email provider"). In my training and experience, I have learned that the email provider provides a variety of online services, including email access, to the general public. The email provider allows subscribers to obtain email accounts at the domain name "Hotmail.com," like the email account listed in Attachment A. Subscribers obtain an account by registering with the email provider. During the registration process, the email

provider asks subscribers to provide basic personal information. Therefore, the computers of the email provider are likely to contain stored electronic communications (including retrieved and unretrieved email for the email provider's subscribers) and information concerning subscribers and their use of the email provider's services, such as account access information, the email transaction information, and account application information.

20.   In general, an email that is sent to the email provider's subscriber is stored in the subscriber's "mail box" on the email provider's servers until the subscriber deletes the email.  If the subscriber does not delete the message, the message can remain on the email provider's servers indefinitely.

21.   When the subscriber sends an email, it is initiated at the user's computer, transferred via the Internet to the email provider's servers, and then transmitted to its end destination.  The email provider often saves a copy of the email sent.  Unless the sender of the email specifically deletes the email from the email provider's server, the email can remain on the system indefinitely.

22.   A sent or received email typically includes the content of the message, source and destination addresses, the date and time at which the email was sent, and the size and length of the email.  If an email user writes a draft message but

does not send it, that message may also be saved by the email provider but may not include all of these categories of data.

23.   A subscriber of the email provider can also store files, including emails, address books, contact or buddy lists, calendar data, pictures, and other files, on servers maintained and/or owned by the email provider.

24.   In my experience, subscribers do not routinely copy emails stored in their Hotmail account in order to store the emails on a home computer or other location, although it is possible to do so.  This is particularly true when they access their Hotmail account through the web, or if they do not wish to maintain particular emails or files in their residence.

25.   In general, email providers like Hotmail ask each of their subscribers to provide certain personal identifying information when registering for an email account.  This information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number).

26.   Email providers typically retain certain transactional information about the creation and use of each account on their systems.  This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of

15

service utilized, the status of the account (including whether
the account is inactive or closed), the methods used to connect
to the account (such as logging into the account via the email
provider's website), and other log files that reflect usage of
the account.  In addition, email providers often have records of
the Internet Protocol address ("IP address") used to register the
account and the IP addresses associated with particular logins to
the account.  Because every device that connects to the Internet
must use an IP address, IP address information can help to
identify which computers or other devices were used to access the
email account.

   27.  In some cases, email account users will
communicate directly with an email service provider about issues
relating to the account, such as technical problems, billing
inquiries, or complaints from other users.  Email providers
typically retain records about such communications, including
records of contacts between the user and the provider's support
services, as well records of any actions taken by the provider or
user as a result of the communications.

   28.  In my training and experience, evidence of who was
using an email account may be found in address books, contact or
buddy lists, emails in the account, and attachments to emails,
including pictures and files.

   C. <u>INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED</u>

29.   I anticipate executing this warrant in accordance with the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require the email provider to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

III. <u>CONCLUSION</u>

30.   Based on my training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that on the computer systems in the control of the email provider there exists evidence of crimes.  Accordingly, a search warrant is requested.

31.   This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that - has jurisdiction over the offense being investigated."  18 U.S.C. § 2711(3)(A)(i).

17

32. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

WHEREFORE, your deponent respectfully requests that the requested search warrant be issued for THE PREMISES KNOWN AND DESCRIBED AS ELECTRONIC MAIL ADDRESS "shakilajmal@hotmail.com."

IT IS FURTHER REQUESTED that all papers submitted in support of this application, including the application and search warrant, be sealed until further order of the Court, to prevent the destruction of evidence and the flight of potential targets other than Choudhry.

CHRISTOPHER HECK
Special Agent
Department of Homeland Security
Homeland Security Investigations


Sworn to before me this
15th day of April, 2013

s/William F. Kuntz, II

THE HONORABLE WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF NEW YORK

18

**ATTACHMENT A**
<u>Property to Be Searched</u>

This warrant applies to information associated with the EMAIL
PREMISES "shakilajmal@hotmail.com" that is stored at premises
owned, maintained, controlled, or operated by Microsoft
Corporation, a company headquartered in Redmond, Washington.

**ATTACHMENT B**
Particular Things to be Seized

I.  Information to be disclosed by Microsoft Corporation

        To the extent that the information described in
Attachment A is within the possession, custody, or control of
Microsoft Corporation, Microsoft Corporation is required to
disclose the following information to the government for each
account or identifier listed in Attachment A from November 2012
until the present:

    a.  The contents of all emails stored in the account,
        including copies of emails sent to and from the
        account, draft emails, the source and destination
        addresses associated with each email, the date and time
        at which each email was sent, and the size and length
        of each email;

    b.  All records or other information regarding the
        identification of the account, to include full name,
        physical address, telephone numbers and other
        identifiers, records of session times and durations,
        the date on which the account was created, the length
        of service, the types of service utilized, the IP
        address used to register the account, log-in IP
        addresses associated with session times and dates,
        account status, alternative email addresses provided
        during registration, methods of connecting, log files,
        and means and source of payment (including any credit
        or bank account number);

    c.  All records or other information stored by an
        individual using the account, including address books,
        contact and buddy lists, calendar data, pictures, and
        files;

    d.  All records pertaining to communications between
        Microsoft Corporation and any person regarding the
        account, including contacts with support services and
        records of actions taken.

II.  Information to be seized by the government

        All information obtained from Microsoft Corporation
will be maintained by the government for the purpose of
authentication and any potential discovery obligations in any
related prosecution.  The information shall be reviewed by the
government only for the purpose of identifying and seizing all
information described above in Section I that constitutes fruits,

evidence and instrumentalities of conspiracy to commit murder abroad, in violation of Title 18, United States Code, Section 956, and the transmission of threats to injury the person of another in interstate commerce, in violation of 18 U.S.C. § 875(c), since November 2012, including, for the account or identifier listed on Attachment A:

    a.    Choudhry's motivation to threaten and murder Shujat Abbas and his family.

    b.    Choudhry's efforts to prevent Shujat Abbas from fleeing Pakistan and entering the United States.

    c.    Choudhry's efforts to impugn the reputation of Shujat Abbas in order to establish potential alternative bases for someone to want to injure Shubat Abbas and his family.

    d.    Communications between Choudhry and others designed to further Choudhry's ability to find and murder Shujat Abbas and his family,

    b.    Records relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts.