LAW OFFICES OF
# Frederick L. Sosinsky
45 BROADWAY, SUITE 3010
NEW YORK, NEW YORK 10006

TELEPHONE (212) 285-2270
TELECOPIER (212) 248-0999
EMAIL: FredS@newyork-criminaldefense.com

June 4, 2014

BY ECF
Hon. William F. Kuntz
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Mohammad Ajmal Choudhry
13 Cr. 150 (S-1) (WFK)

Dear Judge Kuntz:

Defendant Mohammad Ajmal Choudhry respectfully submits this letter in support of his motion *in limine* to (a) preclude the introduction at trial of testimony from an unnamed expert witness regarding the subjects of "honor killings, arranged marriages and gender dynamics in Pakistani culture," or (b) grant a continuance of the trial for a period of several weeks to allow the defense to seek and obtain its own cultural consultant or expert. For the reasons discussed below, the Court should grant defendant's application.

### The "Notice" Received

On June 1, 2014, just over two weeks before the scheduled start of trial, the Government, for the first time, wrote to counsel indicating that it intended to call as a witness at trial an expert "to testify regarding the role of honor killings, arranged marriages and gender dynamics in Pakistani culture." (Government Letter dated June 1, 2014, attached as Exhibit A hereto). The Government further wrote that the witness would offer testimony "regarding the frequency and typical circumstances of such honor killings." No further disclosure, pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G), was provided. In particular, the Government has not provided the defense with a written summary or report of any testimony to be proffered by such expert, including a statement of the expert's opinion, the bases and reasons for this opinion and the witness' qualifications. *See* Rule 16 (a)(1)(G). In their initial Rule 16 letter in this case dated April 9, 2013, the Government indicated that it would comply with its obligations under this rule and notify defendant in a timely fashion of any expert they expected to call at trial. (Government Letter dated April 9, 2013, attached as Exhibit B hereto).

Defendant Choudhry objects to and moves to prohibit introduction of the proposed expert's testimony on several grounds. First, we move to preclude on the ground that such belated disclosure, coming as is does only two weeks before the start of trial, runs contrary to the purpose of Rule 16 and prejudices defendant. At this late date, defendant is wholly unaware of the identity of the expert, let alone his or her purported qualifications, whether such expert has previously written on or testified on similar issues such that transcripts of this previous testimony should be provided or obtained, the basic premises upon which the expert seeks to testify, the basis of knowledge of the expert's testimony, how such testimony relates to issues expected to be properly addressed and/or contested at trial and whether the expected testimony involves the offer of opinion or is instead more general in nature not involving comment on the particulars of this case. Defendant should not have to be scrambling at this juncture to discern what it is that the Government proposes to offer and to find his own expert to consult with. Second, we move to preclude the proffered testimony on the ground that, assuming an expert could even be qualified in this area, none of the topics referred to are properly the subject of expert testimony. Evidence that there have been in Pakistan under other circumstances so-called honor killings, for whatever the reasons that this is so, is not information that makes it more or less likely that in this case, defendant agreed with others to commit such a crime. Such testimony does not make it more probable that in this case, the defendant conspired to commit murder. But such evidence could easily be used by a jury to conclude that, consistent with a prevalent practice in the country generally, the killings at bar were honor murders. Nor will learning about the general custom of arranged marriages in Pakistani culture make it more or less likely that the jury would conclude that defendant intended to threaten anyone, or to have members of the Abbas family murdered. Third, the prejudicial impact -- the probable play on emotions -- of the proposed testimony far outweighs what little probative value such evidence may provide.

### A. *The Law Regarding Expert Disclosure*

Rule 16 of the Federal Rules of Criminal Procedure "provides that the defense is entitled to discovery of a written summary of expert testimony that the government intends to use in its case-in-chief.' *United States v. Dukagjini*, 326 F.3d 45, 56 (2d Cir. 2003). The summary provided must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications. Fed.R. Crim. Pro. 16(a)(1)(G). The rule "is intended to minimize [the] surprise that often results from unexpected testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." *United States v. Cruz*, 363 F.3d 187, 200 at fn.2 (2d Cir. 2004). Where, as here, the Government has represented to the defendant that it would comply with Rule 16's requirements pertaining to expert testimony, the Government bears the burden of following through on that representation. *Id.* And pursuant to Rule 16(d)(2), upon a failure of a party to comply with its obligations under the Rule, the Court may prohibit that party from introducing the undisclosed evidence, grant a continuance, or enter any other just order. Fed. R. Crim. Pro. 16(d)(2)(A-D). *See United States v. Barile*, 286 F.3d 749 (4th Cir. 2002)(affirming preclusion of expert opinion testimony based on inadequate Rule 16 disclosure).

### B. *The Law Governing Admission of Expert Testimony*

The admission of expert evidence is governed by Federal Rule of Evidence 702, which provides:

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed.R. Evid. 702(a).

Rule 702 assigns to the district court the role of "gatekeeper" and charges the court with ensuring that expert testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 597 (1993); *United States v. Cruz*, 363 F.3d 187, 192 (2d Cir. 2004). To fulfill this gatekeeping function requires a two-part inquiry. First, the court must determine whether the proffered expert testimony is reliable. The party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence. *See United States v. Williams*, 506 F.3d 151, 160-61 (2d Cir. 2007). In determining reliability, the court is to assess whether the reasoning or methodology underlying the expert's testimony is valid. The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation. *See Daubert*, 509 U.S. at 589, 590. Second, the court must decide whether the expert's reasoning or methodology "fits" the facts of the case and whether it will thereby assist the trier of fact in understanding the evidence; in other words, whether the expert's testimony is relevant. *See Daubert*, 509 U.S. at 591; Fed.R.Evid. 702. The gatekeeping function is thus critically important because it "ensure[s] the reliability and relevancy of expert testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Courts in this circuit also will examine whether expert testimony "will 'usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999), quoting *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994).

Federal Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401.

Rule 703 provides more detail regarding the kinds of facts or data upon which an expert may rely in formulating an opinion. As amended in 2000, Rule 703 requires that such underlying facts or data be "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Fed.R.Evid. 703. If the underlying facts or data relied on are otherwise inadmissible, the expert may not disclose them to the jury "unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect." Fed.R.Evid. 703. *See also United States v Long*, 917 F.2d 691 (2d Cir. 1990) (in allowing an FBI agent's detailed descriptions of organized crime families, trial court erred because the evidence was only marginally relevant and not directly related to the case, and thus its prejudicial effect substantially outweighed its probative value). This portion of Rule 703 "provides a presumption against disclosure to the jury of information used as the basis of an expert's opinion and not admissible for any substantive purpose, when that information is offered by the proponent of the expert." Fed.R.Evid. 703, Advisory Committee Note. While expert testimony may be proffered regarding a wide variety of subject matters, there are limits on the kinds of facts or data upon which an expert may rely in formulating an opinion. For instance, an expert opinion that is nothing more than a recitation of otherwise inadmissible hearsay is simply not valid. *See Plourde v. Gladstone*, 190 F.Supp.2d 708, 720-21 (D. Vt. 2002) (expert opinion inadmissible when it "amounts to nothing more than inadmissible 'hearsay in disguise' under Rule 703"; citing cases), *aff'd mem.*, 69 Fed.Appx. 485 (2d Cir. 2003); *Law v. NCAA*, 185 F.R.D. 324, 341 (D.Kan. 1999) (same).

Finally, expert testimony, like all testimony, must also pass muster under Rule 403, Fed. R. Evid. Rule 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation." The Advisory Committee's notes to Rule 403 define "unfair prejudice" as "an undue tendency to suggest decision on an improper basis, commonly though not necessarily, an emotional one." As the Circuit has cautioned, "[t]he very breadth of the discretion according trial judges in admitting [expert opinions] under Rules 702 and 403 should cause them to give the matter more, rather than less, scrutiny. A trial judge should . . . weigh carefully the risk of prejudice." *Nimely v. City of New York*, 414 F. 3d 381, 397 (2d Cir. 2005); *United States v. Dukagjini*, 326 F.3d 45, 54 (2d Cir. 2003) ("Even if the testimony is admissible under Rule 702, it still must pass muster under Rule 403").

***Argument***

### 1. The Court Should Preclude the Government's Proposed Expert's Testimony As Untimely and Inadequate Under Rule 16

As noted above, the first time that the Government provided any notice to the defendant regarding an expert they intend to call was a few days ago on June 1, 2014. That "notice", if it can be called that, is completely devoid of the type of critical information required by Rule 16(a)(1)(G) and provides defendant with no meaningful

4

notice at all. It fails to disclose the name of an expert, his/her purported qualifications, the substance of the witness' testimony, the bases for such testimony, and even whether the witness would offer any opinion at all. Yet, the matters it refers to generally are so broad and vague that it makes even addressing this opposition difficult.

Because Rule 16's provisions are designed to further the goal of proper presentation, and because the defense cannot adequately prepare for trial in the face of the bare-bones notice just received, we ask that the Court preclude such evidence pursuant to Rule 16(d)(2). *See Barile*, 286 F.3d at 758-59 (district court's exclusion of expert's opinion evidence, while permitting more general testimony, was proper remedy for Rule 16 violation where the notice provided lacked specificity regarding the opinion, methodology used to form such opinion and the reasons for such opinion); *c.f. United States v. Tanguay*, 895 F. Supp.2d 284 (D.N.H. 2012)(defendant's motion to preclude expert's testimony denied where Government provided expert's report containing all of the disclosure required by rule ten months prior to trial but failed to provide witness' CV until shortly before trial). In the alternative, we respectfully request that the Court direct the Government to provide the type of disclosure mandated by Rule 16 and grant a continuance of the trial which would allow the defendant to properly address substantively the purported subject matter of the testimony and to retain our own expert to consult with on these matters while we otherwise prepare for trial.

### 2. *The Court Should Preclude Such Expert Testimony as Irrelevant to the Case*

Even if the Government had offered to call a duly qualified expert witness who had provided the required disclosure, the principal subject about which the Government seeks to have the expert testify, "the frequency and circumstances of ... honor killings," is not, we submit, a proper one for expert testimony under Rule 702, nor is such a subject even relevant to the charges in the case. Defendant Choudhry is accused, as relevant here, of using the telephone to make threats to kill members of the Abbas family in Pakistan for their perceived involved involvement in his daughter Amina's disappearance from her family home and flight to the United States, and of conspiring with others in Pakistan to murder Abbas family members. As the Court is aware, the Government plans to play a number of audio-recordings of telephone conversations between Choudhry and his daughter Amina in which Choudhry is heard stating, in substance, that he would kill Abbas family members if Amina does not return to her family's home in Brooklyn. Testimony concerning the general history, frequency and "circumstances" surrounding honor killings in Pakistan would not tend to make it more or less likely that defendant really intended to threaten Abbas family members or in fact agreed with others to kill such family members. That others in Pakistan, even a large number of citizens, have, over an extensive period of time, reportedly engaged in murders of family members or relatives due to matters allegedly involving honor, shame or the like does not, properly analyzed, make it more probable that in this case, the defendant schemed to do this. Such testimony should only be viewed as seeking to demonstrate that the defendant, based on his culture, was predisposed towards such honor killings and that he likely acted in accordance with such cultural beliefs. This is not a proper purpose for admission of such

5

testimony, no matter how it is dressed up. Moreover, such testimony usurps the role of the jury in deciding whether and why the defendant said and did what he did. It offers an answer based not on the proof in this case, but upon sociological and historical information. Indeed, such testimony instructs the jury that any innocent explanation offered by the defendant for his words and actions flies in the face of long-standing, murderous cultural phenomena.

At its heart, the Government hopes by dint of such testimony to argue that, like many Pakistani's before him, defendant acted violently as a consequence of his honor being insulted. While the Government is free to adduce whatever admissible proof it has that it was this factor that allegedly motivated the defendant to act, they should not be permitted to bolster that proof with plainly irrelevant evidence to the effect that over time, many Pakistani's have acted for the very same reasons.

Furthermore, defendant is not charged or otherwise accused with threatening to harm, let alone kill, his daughter Amina Ajmal, for any purported transgressions she engaged in. Indeed, the audiotaped recordings of Amina's conversations with defendant contain repeated statements by Choudhry (and others heard on the calls as well) imploring Amina to simply come back to her family's house in Brooklyn from wherever she was, that no harm would or could ever come of her here, to let him know who was telling her that he or anyone in the home would harm her, and inviting her to go to the NYPD before coming home if she was still at all concerned that anyone would possibly hurt her. Thus, it is not even clear how the whole subject of honor killings of family members even relates to the issues at hand. To the extent that the expert testimony would include evidence that there have been targets of honor killings above and beyond family members, such accounts still would not be relevant as they do not make it more likely that defendant actually intended to or acted on his words in this case.

Nor are the proposed subjects of "arranged marriage" or "gender dynamics" proper ones for expert testimony at bar. A number of lay witnesses will be called by the Government, including Amina, Rukhsana Kausar and her daughter Seemab Ashgar, all of whom are expected to offer testimony concerning the matter of arranged marriages, including, we expect, testimony regarding their own such marriages and/or that of their extended family members. And the Government has proposed showing certain videotapes to the jury which themselves depict ceremonies surrounding such arranged marriages. In addition, we expect that each of these witnesses will offer related testimony regarding the role of women in Pakistani culture and marriages. We submit that the practice of arranged marriages is common enough around the world and is present even amongst many cultures in this country, as well as described in the print and other media, such that it is not outside the ken of the average juror and thusly appropriate for expert testimony. Having an expert testify about the practice would not make it more likely or less likely that in this particular case, Amina Ajmal, in contrast to many other Pakistani women, was compelled against her will to enter into her marriage to her husband.

### 3. *The Court Should Preclude The Expert Testimony Under Rule 403*

6

Even if the Court were to deem the proffered expert testimony relevant and helpful to the jury, the probative value of such evidence would be substantially outweighed by the risk of undue prejudice. Accordingly, under Rule 403, Fed. R. Evid, such evidence should be precluded. Allowing the jury to hear testimony about the frequency and circumstances of honor killings in Pakistan is to expose them to information that almost surely would have an unfair but highly significant emotional impact. Evidence about how often honor killings take place there, the motives for such murders, the most common perpetrators of such crimes, the manner of death, location of many such crime scenes and similar data is sure to appeal to the passions of the jury and take their attention away from the real factual disputes that will arise at the trial. As the Advisory Committee noted, such evidence is precisely the type of proof that would create an "undue tendency to suggest decision on an improper basis, commonly though not necessarily, an emotional one."

### *Conclusion*

For the reasons set forth above, defendant Choudhry respectfully moves to preclude the testimony of the Government's proposed expert witness as untimely and inadequately noticed under Rule 16, as improper expert testimony under Rules 702 and 703 and excludable under Rule 403.

Respectfully submitted,

Frederick L. Sosinsky

Encl.
FLS: bms

cc: Amanda Hector, Esq. (by ECF)
    Margaret Gandy, Esq. (by ECF)
    Richard Tucker, Esq. (by ECF)
       Assistant U.S. Attorneys

**EXHIBIT A**



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

RMT
F.#2013R00312

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

June 1, 2014

**By ECF**

Frederick L. Sosinsky, Esq.
45 Broadway, 30th Floor
New York, NY 10006

      Re:    United States v. Mohammad Ajmal Choudhry
              Criminal Docket No. 13-150 (S-1)(WFK)

Dear Counsel:

      Pursuant to Rule 16 of the Federal Rules of Criminal Procedure, the government hereby writes to notify you that it has in its possession the defendant's original Alien File, which can be made available for your review at a mutually convenient time.

      In addition, the government writes, pursuant to Rule 16(a)(1)(G), to advise that the government anticipates calling an expert witness to testify regarding the role of honor killings, arranged marriages and gender dynamics in Pakistani culture. In particular, the government expects that this witness will testify regarding the frequency and typical circumstances of such honor killings.

                              Very truly yours,

                              LORETTA E. LYNCH
                              United States Attorney

                By:    /s/
                       Amanda Hector
                       Richard M. Tucker
                       Margaret E. Gandy
                       Assistant U.S. Attorneys
                       (718) 254-6212/6204/6213

cc:    Clerk of Court (WFK) (via ECF)

**EXHIBIT B**



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

AH/MG
F.#2013R00312

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

April 9, 2013

<u>By Hand and ECF</u>

Joshua Dratel, Esq.
Dratel & Mysliwiec, P.C.
2 Wall Street, 3rd Floor
New York, N.Y. 10005
jdratel@dratelmys.com

   Re: United States v. Mohammad Ajmal Choudhry
     <u>Criminal Docket No. 13-0150 (WFK)</u>

Dear Mr. Dratel:

  Enclosed please find the government's discovery in accordance with Rule 16 of the Federal Rules of Criminal Procedure. The government also requests reciprocal discovery from the defendant.

  <u>The Government's Discovery</u>

   1. <u>Statements of the Defendant</u>

  Enclosed with this letter is a Report of Investigation memorializing the defendant's post-arrest statements, Bates numbered CHOUDHRY00001-CHOUDHRY00003. In addition, enclosed with this letter are six audio files containing statements made by the defendant in telephone conversations that were recorded by law enforcement, Bates numbered CHOUDHRY00022-CHOUDHRY00027.

   2. <u>The Defendant's Criminal History</u>

  At present, the government does not have any information indicating that the defendant has a criminal history.

   3. <u>Documents and Tangible Objects</u>

  You may examine the physical evidence discoverable under Rule 16, including original documents, by calling me to arrange a mutually convenient time. Enclosed with this letter are copies of such documents, namely a Petition for Alien

Relative and the documents that were submitted in support of the Petition, Bates numbered CHOUDHRY00004-CHOUDHRY00021.

4. <u>Reports of Examinations and Tests</u>

At present, the government does not have any reports of examinations or tests. The government will provide you with copies of any reports of examinations or tests in this case, as they become available.

5. <u>Expert Witnesses</u>

The government will comply with Fed. R. Crim. P. 16(a)(1)(G) and Fed. R. Evid. 702, 703 and 705 and notify you in a timely fashion of any expert that the government intends to call at trial and provide you with a summary of the expert's opinion.

6. <u>*Brady* Material</u>

The government is not aware of any exculpatory material regarding the defendant. The government understands and will comply with its continuing obligation to produce exculpatory material as defined by <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and its progeny.

Before trial, the government will furnish materials discoverable pursuant to Title 18, United States Code, Section 3500, as well as impeachment materials. See <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

7. <u>Other Crimes, Wrongs or Acts</u>

The government will provide the defendant with reasonable notice in advance of trial if it intends to offer any material under Fed. R. Evid. 404(b).

<u>The Defendant's Required Disclosure</u>

The government hereby requests reciprocal discovery under Rule 16(b) of the Federal Rules of Criminal Procedure. The government requests that the defendant allow inspection and copying of (1) any books, papers, documents, data, photographs, tapes, tangible objects, or copies or portions thereof, that are in the defendant's possession, custody or control, and that the defendant intends to introduce as evidence or otherwise rely on at trial, and (2) any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, or copies thereof, that are in the defendant's possession, custody or control, and that the defendant intends to introduce as evidence or otherwise rely upon at trial, or that were prepared by a witness whom the defendant intends to call at trial.

The government also requests that the defendant disclose prior statements of witnesses who will be called by the defendant to testify. <u>See</u> Fed. R. Crim. P. 26.2. In order to avoid unnecessary delays, the government requests that the defendant have copies of those statements available for production to the government no later than the commencement of trial.

The government also requests that the defendant disclose a written summary of testimony that the defendant intends to use as evidence at trial under Rules 702, 703, and 705 of the Federal Rules of Evidence. The summary should describe the opinions of the witnesses, the bases and reasons for the opinions, and the qualification of the witnesses.

Pursuant to Fed. R. Crim. P. 12.3, the government hereby demands written notice of the defendant's intention, if any, to claim a defense of actual or believed exercise of public authority, and also demands the names and addresses of the witnesses upon whom the defendant intends to rely in establishing the defense identified in any such notice.

<u>Future Discussions</u>

If you have any questions or requests regarding further discovery or a disposition of this matter, please do not hesitate to contact me.

Please be advised that, pursuant to the policy of the Office concerning plea offers and negotiations, no plea offer is effective unless and until made in writing and signed by

3

authorized representatives of the Office.  In particular, any discussion regarding the pretrial disposition of a matter that is not reduced to writing and signed by authorized representatives of the Office cannot and does not constitute a "formal offer" or a "plea offer," as those terms are used in Lafler v. Cooper, 132 S. Ct. 1376 (2012), and Missouri v. Frye, 132 S. Ct. 1399 (2012).

        Very truly yours,

        LORETTA E. LYNCH
        United States Attorney

By:     /s/
     Margaret E. Gandy
     Amanda Hector
     Assistant U.S. Attorneys
     (718) 254-6213
     (718) 254-6212

Enclosures

cc: Clerk of the Court (WFK) (by ECF) (without enclosures)