LAW OFFICES OF

# Frederick L. Sosinsky

45 BROADWAY, SUITE 3010

NEW YORK, NEW YORK 10006

---

TELEPHONE (212) 285-2270

TELECOPIER (212) 248-0999

EMAIL: FredS@newyork-criminaldefense.com

June 4, 2014

BY ECF
Hon. William F. Kuntz
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:   United States v. Mohammad Ajmal Choudhry
              13 Cr. 150 (S-1) (WFK)

Dear Judge Kuntz:

      Defendant Mohammad Ajmal Choudhry respectfully submits this letter in opposition to the motion of the Government dated May 28, 2014 to admit certain evidence against defendant at trial. As discussed below, defendant Choudhry objects to the introduction of most, but not all, of the items the Government refers to in its application.

### *Videotapes of Wedding Celebrations*

      The Government seeks admission of three videotapes made during wedding celebrations which occurred in 2001 and 2007. Defendant's brother, Mohammad Akmal Choudhry ("Akmal") and other relatives of the defendant, as well as members of the Abbas family and others, are depicted on these videos dancing, throwing money into the air and firing off gunshots from the roof of the Abbas' home in Pakistan. Defendant does not object to the offer of these videos at trial. We will, however, ask for an instruction to the jury that there is no claim in this case that the possession or use of the weapons seen on the videos on the dates depicted was unlawful, or as the Government terms it at page 11 of their motion, "indicative of criminality."

### *Alleged Co-Conspirator Statements*

      The Government argues in their motion that there existed a number of interrelated conspiracies at bar and seeks admission of testimony regarding statements allegedly made by (i) Akmal to defendant's daughter Amina Ajmal threatening her with violence if she did not agree to marry Abrar Ahmed Babar and further, relating that Amina's father, defendant, had approved of this threat, and (ii) defendant's son Shakeel indicating that the family was moving forward with a plan to apply for a U.S. visa for Babar following

Amina's marriage to him in Pakistan. Defendant objects to the introduction of these statements at trial as co-conspirator statements as there is an insufficient showing made that Akmal and Shakeel were part of any conspiracy that purportedly existed.

As to Akmal, assuming he made such a statement to Amina, there is no proof offered that in fact defendant had told either Amina or Akmal that he condoned or sanctioned any threat that Akmal made. Nowhere in the Government's proffer is there evidence set forth indicating that defendant ever threatened his daughter, directly or indirectly. That Akmal, who together with other family members, Amina lived with for almost three years in Pakistan, may have made such a threat to Amina, does not mean that the statement was authorized by defendant. Akmal, being the brother of defendant and a caretaker to Amina, may have had his own reasons to talk sternly with her about her plans. If he did, such statements should not be admitted against defendant even if Akmal told her that her father concurred. Likewise, as to Shakeel, any statement he may have made to Amina concerning passport photographs to be used in connection with a visa application on behalf of her husband Babar does not prove that he was involved with defendant in a plan to file a fraudulent or forged application. Rather, from the very nature of the conversation and the time when it occurred -- apparently on the heels of the wedding of Amina and Babar -- Shakeel may well have believed for good reason that Amina was aware of and had authorized submission of the application on her behalf. Thus, there is insufficient proof that Shakeel was part of a conspiracy and that his statement to Amina was in furtherance of such conspiracy.

The Government also seeks to admit statements made by various Choudhry family members, including Akmal, to members of the Abbas family, threatening them with harm if Amina did not return home or if they did not provide information about her whereabouts. Defendant objects to admission of these statements as well on the ground that such threats were not authorized by defendant. The fact that members of his family may have acted without his knowledge or approval in making such statements or threats should not, on the record before the Court, allow for their introduction against defendant.

### *Evidence of a Previous Shooting Incident Abroad*

Defendant opposes the Government's application to admit evidence that the defendant on a previous occasion years before the events at issue at bar had "ordered" unidentified individuals in Pakistan to fire shots at certain others who had accused defendant of being unable to control the behavior of his older daughter Tasneem. In two of his recorded conversations with Amina from February 2013, defendant makes reference to having in the past had "firings done" at unnamed persons involved in "taunting" him, allegedly over Tasneem's attempt to avoid her arranged marriage. Defendant also tells Amina in a recorded call that "[W]henever I get a chance, I will kill them," referring to the same unnamed persons. Notably, the Government does not allege that any incident where shots were fired at the defendant's behest actually took place even once, let alone "three times", as defendant claims in the recording. Nevertheless, the Government seeks to offer such statements and testimony from Amina regarding her

sister's overnight stay at a friend's house in Brooklyn, as direct evidence of defendant's threats over the telephone, to prove defendant's intentions when issuing threats against the Abbas family or to complete the narrative, provide necessary background and/or context.

As the Government correctly notes in their motion, to prove defendant guilty of Count Three of the indictment, they must show that defendant was making a "true" or real threat over the telephone, one that is "on its face and in the circumstances in which it is made so unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution." (Government Motion at p. 21, fn 6, citing *United States v. Sovie*, 122 F.3d 122, 125 (1997)). However, defendant's apparently contrived claim that he had in the past had others shoot at people who had harassed him and would in the future, when he got a chance, once attempt to kill these unidentified persons, does not make it more likely than not that his statements regarding killing members of the Abbas family were "true." Indeed, every one of the statements defendant related to Amina about doing so was conditioned upon her refusal to return to the family's Brooklyn home. If she only were to return home, defendant tells Amina repeatedly, no harm would come to anyone. Thus, the threats heard were not "unequivocal, unconditional, immediate."

We submit that whatever marginal probity the evidence that defendant claimed to have in the past had people who had taunted him shot at in Pakistan is substantially outweighed by its prejudicial impact and that such evidence should be precluded under Fed. R. Evid. 403.

### *Statements of Future Intent*

Finally, the Government moves to admit testimony from "multiple witnesses" that "certain individuals", including Ashgar Abbas, told witnesses of their plan to do certain things. The Government has not provided any proffer of statements sought to be introduced under Federal Rule of Evidence 803(3) and the so-called *Hillmon* doctrine other than three such statements allegedly made by Ashgar about his future intent. Therefore, as a preliminary matter, we object to the offer except as it relates to statements of Ashgar. As to the statements of Ashgar, so long as the Court properly instructs the jury that they may consider such proof only as evidence that Ashgar acted in conformance with his stated intent, and not that anyone else did, defendant Choudhry does not object to the second and third listed statements. Choudhry does object to the first statement because it fails to identify which member(s) of the "Choudhry family" Ashgar reportedly told the witness he planned to meet with at the local politician's residence. Without a more particular statement as to what exactly was heard, the Court should not permit such testimony.

*Conclusion*

For the reasons set forth above, as to those items of evidence to which defendant objects, the Court should deny the Government's motion to admit certain evidence at trial.

Respectfully submitted,

Frederick L. Sosinsky

FLS: bms

cc: Amanda Hector, Esq. (by ECF)
    Margaret Gandy, Esq. (by ECF)
    Richard Tucker, Esq. (by ECF)
      Assistant U.S. Attorneys