UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
UNITED STATES OF AMERICA,       :
       :
     v.        :     **MEMORANDUM & ORDER**
       :     13-CR-150 (WFK)
MOHAMMAD AJMAL CHOUDHRY,    :
       :
      Defendant.     :
------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On May 7, 2015, the Court sentenced Mohammad Ajmal Choudhry ("Defendant") to life imprisonment following his conviction for conspiracy to commit murder in a foreign country in violation of 18 U.S.C. §§ 956(a)(1) and 956(a)(2)(A); fraud and misuse of a petition for an alien relative in violation of 18 U.S.C. § 1546(a); and transmission of threats to injure in violation of 18 U.S.C. § 875(c). Before the Court is Defendant's motion to reduce his sentence pursuant to 18 U.S.C. § 3582. For the reasons set forth below, the Court DENIES Defendant's motion in its entirety.

## BACKGROUND

### I.    The Offense Conduct

A. <u>Background</u>

Defendant's daughter, Amina Ajmal ("Amina"), immigrated to the United States in 1999 and subsequently became a naturalized United States citizen. Presentence Investigation Report ("PSR") ¶ 5, ECF No. 105. Pursuant to a traditional custom of arranged marriage, it was understood within Defendant's family that Amina would marry Abrar Ahmed Babar ("Babar"), the son of Defendant's cousin and a Pakistani national living in Pakistan. *Id.*; Addendum to PSR, ECF No. 111. In 2009, Amina asked for permission from Defendant for her to instead marry Shujat Abbas ("Shujat"), who also lived in Pakistan and with whom Amina had a relationship for several years. PSR ¶ 5. In November 2009, Amina traveled with Defendant to Pakistan for the wedding of a cousin, with the understanding that Defendant would break off Amina's arranged marriage to Babar. *Id.*

1

However, Defendant had no such intention. *Id.* Following the wedding, Defendant returned to the United States and left Amina at the family home in Chiryawala, Pakistan, in the custody of Defendant's brother, Muhammad Akmal Choudhry ("Akmal"), and informed Amina she would remain there until she married Babar. *Id.* ¶ 6. Amina remained in Pakistan against her will for the next three years. *Id.* After the family became aware that Amina's relationship with Shujat continued during that time, Defendant called Amina and told her that he would kill her if she continued to resist marrying Babar. *Id.* Akmal also informed Amina that Defendant had given him permission to kill her if she did not agree to the arranged marriage. *Id.* Amina unwillingly married Babar in 2012. *Id.*

B. Visa Fraud

In December 2012, Amina's brother, Shakeel Choudhry ("Shakeel") informed her that the family would file a visa application for Babar to immigrate to the United States. *Id.* ¶ 7. Shakeel asked her to provide passport-style photos of herself taken at the family home in Brooklyn, New York. *Id.*. On December 1, 2012, the United States Citizenship and Immigration Services received by mail from Brooklyn, New York, an immigrant visa petition listing Amina as the petitioner and Babar as the relative beneficiary. *Id.* The visa petition bore the forged signature of Amina and stated Amina had resided at Defendant's address in Brooklyn since 2008, despite the Amina having remained in Pakistan against her will since 2009. *Id.* In a consensually recorded conversation between Defendant and Amina on February 21, 2013, Defendant admitted that he had filed the visa petition. *Id.* Defendant also admitted to arresting agents that he had filed the visa petition in a subsequent post-arrest statement. *Id.*

C. Threats and the Conspiracy to Commit Murder

On January 3, 2013, Amina fled Pakistan and returned to the United States, with the assistance of Shujat and the United States Consulate. *Id.* ¶ 8. On January 26, 2013, Shujat's father, Mohammad Asghar ("Asghar"), and mother, Rukhsana Kousar ("Rukhsana"), were instructed by Javed Iqbal ("Javed"), Akmal's son-in-law's cousin, to meet with Akmal and Javed. *Id.* ¶ 10. If they failed to do so, Shujat would be killed. *Id.*; Addendum to PSR. While Asghar and Rukhsana were driving to meet with Akmal and Javed, Akmal and several other members of Defendant's family ambushed them, firing numerous shots into the car. PSR ¶ 10. Asghar and Rukhsana survived and escaped, and thereafter Shujat's family went into hiding because they feared for their lives. *Id.* A few days later, Javed went to Shujat's family's home and demanded that Asghar speak with Defendant's brother, Afzal. *Id.* Defendant, who was on the phone, informed Asghar that if Amina did not return to the family home, Defendant and his family would kill Asghar's entire family, specifically stating, "[t]his time, we shoot on your car. It was threatening, but next time we will shoot in the chest of all five of you." Transcript of Trial ("Trial Tr.") at 129–30.

Between January 26, 2013 and February 25, 2013, Amina began to make a series of consensually recorded telephone conversations with Defendant. PSR ¶ 11. Amina had been in hiding in the United States and had begun to work with Department of Homeland Security Investigations agents to prevent any violence against her, Shujat, or his family. *Id.* ¶ 9. During the phone calls, Defendant repeatedly threatened that he and his family members would kill Shujat and Shujat's family if Amina did not return to the family's home in Brooklyn. *Id.* ¶ 11. In a phone call recorded four days before the murders, Defendant said to Amina, "I will lay down three of their bodies. I'll pick three of them if you do not come back. As long as you're outside the home, my honor is at stake." Gov't Ex. 105 at 13.

On February 25, 2013, Shujat's father, Asghar, and Shujat's sister, Madiha Abbas ("Madiha") were shot and killed in Pakistan by members of Defendant's family, including Akmal. PSR ¶ 12. As Asghar and Madiha lay injured on the ground, Akmal and other members of Defendant's family kicked them and poked them with the barrels of their guns while Akmal exclaimed that revenge had been taken. *Id.* After the shooting, Shujat's mother, Rukhsana, and sister, Seemab Abbas ("Seemab"), ran to the scene and discovered their murdered family members. *Id.* Defendant's family members then chased Rukhsana and Seemab, but both were able to escape by hiding in various buildings. *Id.* Following the murders of Asghar and Madiha, the Abbas family was forced to live under police protection in Pakistan because of the threat to their lives, and lived in fear until they ultimately fled Pakistan to live in the United States. Transcript of Sentencing ("Sentencing Tr.") at 15.

## II.    Procedural History

On July 3, 2014, following an eight-day trial, Defendant was convicted by a jury of all three counts of a Superseding Indictment, charging him with (1) conspiracy to commit murder in a foreign country in violation of 18 U.S.C. §§ 956(a)(1) and 956(a)(2)(A); (2) fraud and misuse of a petition for an alien relative in violation of 18 U.S.C. § 1546(a); and (3) transmission of threats to injure in violation of 18 U.S.C. § 875(c). *See* Jury Verdict, ECF No. 93; Superseding Indictment, ECF No. 77. On May 7, 2015, this Court sentenced Defendant to life imprisonment on Count One, time served on Count Two, and twenty-four months of imprisonment on Count Three, with the sentences running concurrently. Judgment, ECF No. 114.

On September 11, 2020, Defendant filed a request for compassionate release with the warden at FCI Hazelton, which was denied on October 1, 2020. Def. Mot. 9. The Government does not dispute that Defendant has exhausted his administrative remedies. Gov't Opp. at 4, n.1.

On February 11, 2022, Defendant filed a *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582. Def. Mot., ECF No. 155-1. On April 15, 2022, the Government opposed Defendant's motion. Gov't Opp., ECF No. 159. On July 18, 2022, Defendant filed a reply in further support of his motion. Def. Reply, ECF No. 167.

**DISCUSSION**

**I.  Legal Standard**

The "compassionate release statute," 18 U.S.C. § 3582(c) (1)(A) permits a court to modify a term of imprisonment. To warrant release or a sentence reduction under this provision, and under these circumstances, the Court must find "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Court must consider the factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. *Id.* A defendant "has the burden of showing that 'extraordinary and compelling reasons' to reduce his sentence exist." *United States v. Gotti*, 433 F. Supp. 3d 613, 619 (S.D.N.Y. 2020) (McMahon, C.J.).

A defendant's medical condition may support a sentence reduction if it is (1) a terminal illness, or (2) a serious physical or medical condition, functional or cognitive impairment, or deteriorating physical or mental health due to the aging process, which "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S. SENT'G GUIDELINES MANUAL ("U.S.S.G.") § 1B1.13, app. 1(A); *see also United States v. Wright*, 17-CR-695 (CM), 2020 WL 1922371, at *3 (S.D.N.Y. Apr. 20, 2020) (McMahon, C.J.). However, the Court is not limited by the factors in Guidelines § 1B1.13, and may also "consider the full slate of extraordinary and

5

compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). "The only statutory limit placed on what qualifies as extraordinary and compelling is that '[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.'" *United States v. Martinez*, No. 03-CR-1049 (NGG) (S-2), 2022 WL 3019833, at *2 (E.D.N.Y. July 29, 2022) (Garaufis, J.) (quoting 28 U.S.C. § 994(t)); *see also Brooker*, 976 F.3d at 237–38.

Even if extraordinary and compelling reasons exist, the court is "still required to consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." *United States v. Lisi*, No. 15 CR 457 (KPF), 2020 WL 881994, at *5 (S.D.N.Y. Feb. 24, 2020) (Failla, J.) (citation omitted).

## II.    Extraordinary and Compelling Reasons for Early Release Are Not Presented Here

Defendant requests the Court modify his sentence and release him to home confinement because he is 69 years of age and his medical conditions, which he states include diabetes, chronic obstructive pulmonary disease ("COPD"), asthma, lung cancer, gout, prostate issues, and shortness of breath place him at risk of serious illness from COVID-19. Def. Mot. at 1, 9–11. Defendant has received two doses of a COVID-19 vaccine and is eligible to receive a booster vaccination. Gov't Opp. at 5.

For the "'vast majority of prisoners'—even those with underlying health conditions . . .— the ubiquitous availability of vaccines means that the risk of COVID-19 is no longer an extraordinary basis for release." *United States v. Van Manen*, No. 18-CR-30-3 (PAC), 2022 WL 842989, at *2 (S.D.N.Y. Mar. 22, 2022) (Crotty, J.) (quoting *United States v. Broadfield*, 5 F.4th

801, 803 (7th Cir. 2021)); *see also United States v. McCullum*, No. 15-CR-491 (LTS), 2021 WL
1550322, at *2 (S.D.N.Y. Apr. 20, 2021) (Swain, C.J.) (finding defendant with COPD and
asthma did not demonstrate extraordinary or compelling circumstances for release given the
availability of vaccines).

Indeed, courts in the Second Circuit have routinely found that the vaccine provides
"'significant protection against serious illness or death should [a defendant] contract COVID-
19,' and have denied release on compassionate release grounds where defendants are fully
vaccinated." *United States v. Sosa*, No. 14 CR. 468-1 (AT), 2022 WL 1690833, at *3 (S.D.N.Y.
May 26, 2022) (Torres, J.) (quoting *United States v. Diaz*, No. 19-CR-65 (JMF), 2021 WL
2018217, at *1 (S.D.N.Y. May 20, 2021) (Furman, J.)) (alterations in original), *appeal
withdrawn*, No. 22-1214, 2022 WL 3969824 (2d Cir. July 5, 2022); *see also United States v.
Jones*, No. 17 CR 214 (CM), 2021 WL 4120622, at *2 (S.D.N.Y. Sept. 9, 2021) (McMahon, J.)
(collecting cases); *United States v. Delgado*, No. 19-CR-732 (KMW), 2022 WL 252064, at *3
(S.D.N.Y. Jan. 27, 2022) (Wood, J.) (finding a defendant suffering from chronic hypertension,
obesity, diabetes, and hyperlipidemia did not demonstrate extraordinary and compelling reasons
for early release because he was vaccinated).

Defendant argues he demonstrates extraordinary and compelling circumstances despite
his vaccination status because of the spread of the Omicron variant of COVID-19.  Def. Reply at
3–4.  While Omicron has been found to be "more resistant to the vaccines that have been
developed," "recent studies have revealed that Omicron causes a less serious infection in most
people, specifically sparing the lungs, while vaccination still provides excellent protection
against the most severe consequences of even this new variant—death and extended

hospitalization." *United States v. Jaber*, No. S1 13 CR 485 (CM), 2022 WL 35434 at *3 (S.D.N.Y. Jan. 4, 2022) (McMahon, J.) (internal quotation omitted).

The Court has carefully considered the serious concerns raised by Defendant's health. However, because Defendant is vaccinated against COVID-19, his medical conditions do not give rise to extraordinary and compelling circumstances warranting a modification of his sentence. Furthermore, Federal Correctional Institution Hazelton ("FCI Hazelton") currently has zero reported cases of COVID-19 among inmates or staff, and the Federal Correctional Complex Hazelton ("FCC Hazelton") overall has vaccinated 3,334 inmates and 487 staff to date. *See* BOP, *COVID-19 Update*, https://www.bop.gov/coronavirus/ (last visited Nov. 18, 2022). The Court thus finds the limited exposure to COVID-19 currently present at the detention facility, combined with Defendant's vaccinated status, does not give rise to extraordinary and compelling reasons for early release.[1] *See United States v. Jones*, 17 F.4th 371, 375 (2d Cir. 2021) (affirming denial of compassionate release motion where case counts at the defendant's facility were low at the time of the decision). Furthermore, the medical records Defendant attaches to his motion papers appear to indicate Defendant's medical conditions are stable and subject to regular monitoring by healthcare providers. Medical Records, Ex. 2, Def. Mot., ECF No. 155-2. These conditions alone do not sufficiently support early release.

Finally, Defendant argues his rehabilitation supports a sentence reduction. Def. Mot. 29–30. Specifically, Defendant notes he has participated in several classes and has had no

---

[1] The parties' filings refer to Defendant's custody at FCI Hazelton. However, Bureau of Prisons online records show Defendant is now housed at United States Penitentiary Coleman I ("USP Coleman"). *See* BOP, *Inmate Lookup*, https://www.bop.gov/inmateloc/ (last visited Nov. 18, 2022). USP Coleman currently has only one reported case of COVID-19 among inmates and two reported cases among staff. *See* BOP, *COVID-19 Update*, https://www.bop.gov/coronavirus/ (last visited Nov. 18, 2022). To date, the Federal Correctional Complex Coleman ("FCC Coleman") overall has vaccinated 5,449 inmates and 757 staff overall. *Id.* Like at FCI Hazelton, the case numbers are low at USP Coleman, and therefore whether Defendant is in fact at FCI Hazelton or at USP Coleman, the Court's conclusion remains unchanged.

disciplinary incidents. *Id.* The Court commends Defendant's efforts to improve himself. However, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Martinez*, 2022 WL 3019833, at \*2. After careful contemplation of Defendant's health, his vaccination status, the current risk presented at FCI Hazelton, and his stated rehabilitation, the Court finds extraordinary and compelling reasons do not exist to justify Defendant's early release.

**III.    The Sentencing Factors Weigh Against Defendant's Early Release**

Even if Defendant had sufficiently demonstrated "extraordinary and compelling reasons" for sentence reduction, the Court would nonetheless deny his motion because consideration of the § 3553(a) factors continue to weigh heavily against his release. In particular, despite Defendant's stated rehabilitation, consideration of "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant," counsels against a sentence reduction. At the time of his sentencing, the Sentencing Guidelines suggested life imprisonment for Defendant's conduct. As this Court stated when imposing a life sentence, Defendant "orchestrated a calculated, cold-blooded conspiracy to commit murder." Sentencing Tr. at 25. This Court found at the time of sentencing that a life sentence was appropriate given the seriousness of Defendant's conduct, which included repeated threats against the life of his own child, violence against the entire Abbas family, and the murder of two individuals. As Shujat's sister, Seemab, wrote in her victim impact statement submitted at the time of Defendant's sentencing, "by punishing Ajmal, we can have an impact to stop crime all around the world. No other Madiha will die for Ajmal's honor. No Asghar will die, just because Ajmal thinks his

9

existence is a shame to him." PSR at 10. The Court's conclusion remains the same today.
Respect for the law, consideration of the just punishment for this Defendant's offense conduct,
deterrence of like conduct by others, and protection of the Abbas family, Amina, and the public
from further crimes of this Defendant weigh strongly in favor of his continued incarceration.

As this Court stated at Defendant's sentencing hearing, we honor our children and their
rights by giving them love and support and protection and respect, not by destroying and
murdering those whom they love and who love them. And we honor the victims and their loss
by upholding respect for the full force of the law, not by alleviating the serious sentences of
those who would violate it.

## CONCLUSION

For the foregoing reasons, Defendant's motion for compassionate release is denied in its
entirety. The Court also denies as moot Defendant's motion for an extension of time to file a
reply in further support of his motion because he filed his reply on July 18, 2022. The Clerk of
Court is respectfully directed to terminate the motions pending at ECF Nos. 155 and 166 and to
mail a copy of this order to the Defendant.

SO ORDERED,

## s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: November 18, 2022
       Brooklyn, New York

10